WILCOX & McINTYRE v. CITY OF ATLANTA.

A municipal corporation having authority in its charter to assess a tax on "persons carrying on the brokerage business in said city, of not more than three hundred dollars per annum in addition to all other tax they may be required to pay," is authorized to pass an ordinance requiring persons engaged in business as insurance brokers to pay a specified amount for each company with which they do business, provided that the aggregate tax upon each person does not exceed the amount fixed in its charter.

Argued December 14, 1897. — Decided January 21, 1898.

Certiorari. Before Judge Lumpkin. Fulton county. January 28, 1897.

*Glenn & Rountree*, for plaintiffs in error.

*J. A. Anderson* and *J. T. Pendleton*, contra.

COBB, J. Wilcox & McIntyre, a firm composed of H. R. Wilcox and D. I. McIntyre, obtained from the insurance commissioner of this State, under the provisions of section 2072 et seq. of the Civil Code, a license to act as insurance brokers during the year 1896. By its terms they were authorized to send business to five named companies, which had "neither deposit nor agents in this State." Desiring to carry on this business in the City of Atlanta, they applied to the city clerk for a license, and tendered him the sum of fifty dollars in payment of the license fee. The clerk refused to issue the license, demanding payment of the sum of two hundred and fifty dollars. They declined to pay this amount, and began to do business without a license from the city. They were arraigned in the recorder's court, "to answer the charge of doing business without a license," and were convicted and sentenced to pay a fine. To the judgment of the superior court, affirming the judgment of the recorder upon certiorari, they excepted.

The charter of the City of Atlanta authorizes the mayor and general council to assess a tax on persons carrying on the brokerage business, of not more than three hundred dollars in addition to all other tax that such persons are required to pay. Code of the City of Atlanta, 1891, § 30, p. 21; Acts 1874, p. 123. After the passage of the act authorizing the insurance commissioner to license insurance brokers, the City of Atlanta passed an ordinance declaring that "fire-insurance brokers be required to pay the same tax and license as are required of fire-insurance agents for each company they may send business." At the time of the passage of this ordinance there was no ordinance in existence requiring a license or tax of fire-insurance agents, but there was an ordinance taxing insurance companies fifty dollars for every agent doing business in the city. This was evidently the ordinance referred to in the ordinance quoted above. While it is true that the ordinance in regard to insurance agents levies a tax directly upon the company and not upon the agent, and this creates some confusion

and difficulty in reference to the meaning of the ordinance taxing insurance brokers, still, keeping in view the fact that the broker is the only person subject to the laws of this State, it can not be held that the City of Atlanta intended to impose a tax upon a company over which it had no jurisdiction or control. We must therefore determine what was the intention of the lawmaking body of the City of Atlanta when it passed the ordinance taxing insurance brokers.   It is clear that there is no attempt to tax the companies with which the brokers do business.   Such an attempt would be futile, as there is no one in the State of Georgia who can be dealt with in any way as representing such companies.   Civil Code, § 2077.   It is therefore manifest that the authorities intended to impose a tax upon the brokers; and the mentioning of the ordinance referred to as taxing insurance agents is for the sole purpose of defining the amount of the tax to be paid.   The insurance company is taxed fifty dollars for every agent it has doing business in the city. To make the tax upon brokers uniform, as far as possible, with the tax that insurance companies having agents are required to pay, a tax of fifty dollars for every company which the broker represents is imposed upon him.   Each insurance office in the city is required to bear a burden of fifty dollars for every company represented by the individual who is engaged in the business of insurance agent.   Each insurance broker's office is required to bear a like burden for every company with which the broker does business.   The burden is the same in each case.   Uniformity of tax is attained; and that in the one case the tax is paid by the company, and in the other case the tax is paid by the broker, is immaterial.

While the charter limits the power of the city to tax those engaged in the brokerage business to three hundred dollars, it does not limit in any way the power to tax within the limit above mentioned.   A person engaged in business as a produce broker might be taxed a certain amount for each non-resident person or firm with whom he dealt, provided, of course, the aggregate tax did not exceed the sum of three hundred dollars. A live-stock broker might be required to pay a tax of fifty dollars for the privilege of selling one kind of stock, an additional

fifty dollars for another kind, and so on until the aggregate amount of tax required of him would reach the limit fixed in the charter. So an insurance broker might be properly required to pay a tax of fifty dollars for each company with which he does business, until the number of companies exceeds six, when the power of the city to further tax him would be exhausted at that rate. The evident purpose of the city authorities was to make insurance brokers pay a license or tax in proportion to the probable business done in the broker's office; and no fairer or more reasonable plan could have been devised than fixing an amount to be paid for each company with which the broker did business. The inequality that would have been brought about by placing a license tax upon every person engaged in the business of fire-insurance brokerage, without regard to the number of companies with which they deal, is so patent that it is useless to call further attention to it. The ordinance in effect provides for a classification of insurance brokers, brokers dealing with one company belonging to one class, with two companies to another class, and so on until a number is reached which would require the payment of a license of three hundred dollars, when, under the terms of the charter, all such brokers, without regard to the number of companies which they represent, would belong to the same class. It will thus be seen that the ordinance operates uniformly upon the subjects of taxation with which it deals. The taxing of insurance brokers by the municipal corporation does not in any way violate the letter or the spirit of the statute authorizing the licensing of such brokers, and the ordinance attacked in this case is not invalid for any of the reasons assigned in the record.

It being clear that the city authorities had a right to demand a license fee of fifty dollars for each company represented by the plaintiffs in error, and that the latter had no right to demand a license upon payment of a less sum, there was no error in the judgment of the recorder adjudging them guilty of doing business without a license, and the judge of the superior court properly affirmed such decision upon the hearing of the certiorari.     *Judgment affirmed.     All the Justices concurring.*